**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raul Herrera, III, | No. CV-17-00183-TUC-RM |
| Petitioner | **ORDER** |
| v. | |
| Attorney General of the State of Arizona, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Raul Herrera III's Petition for Writ of Habeas Corpus (Doc. 1) and the Report and Recommendation ("R&R") of Magistrate Judge Lynnette C. Kimmins recommending this Court dismiss the Petition (Doc. 27). Respondents, the State of Arizona and David Shinn, the Director of the Arizona Department of Corrections, filed a Response to the Petition (Doc. 19), and Petitioner filed a Reply (Doc. 24). Petitioner also filed Objections (Doc. 32) to the R&R, for which he received permission to significantly exceed the page limit (Doc. 36). Respondents filed a Response to Petitioner's Objections. (Doc. 33.) For the reasons explained below, the Court will overrule Petitioner's Objections, adopt the findings and recommendations made in Magistrate Judge Kimmins's R&R, and dismiss Petitioner's Petition for Writ of Habeas Corpus.

## I.    Background

Petitioner was charged with three counts of sexual conduct with a minor under the age of fifteen, two counts of sexual exploitation of a minor under the age of fifteen, and

one count of kidnapping. (Doc. 19, Ex. A.) The alleged victim was Petitioner's stepdaughter, "A.M." (Doc. 19, Ex. J. at 2.) Petitioner was represented at trial by Natasha Wrae, and the prosecution was represented by Bunkye Chi. (Doc. 26, Ex. A at 3.) Judge Peter J. Cahill presided over the trial. (*Id.* at 2.)

Following six days of jury trial conducted between June 10, 2008, and June 19, 2008, Petitioner was convicted of four of the six charges: two counts of sexual conduct with a minor under the age of fifteen, one count of sexual exploitation of a minor under the age of fifteen, and one count of kidnapping. (Doc. 19, Exs. A, B.) The two sexual conduct charges for which Petitioner was convicted alleged that he "ha[d] the victim masturbate him" and "ha[d] the victim place her mouth on his penis." (Doc. 19, Ex. A.) The sexual exploitation charge alleged Petitioner had possessed a digital photograph of A.M. "engaging in actual or simulated oral sex." (*Id.*) The kidnapping charge alleged Petitioner kidnapped A.M. "with the intent to inflict . . . physical injury or a sexual offense on her." (*Id.*) Petitioner was found not guilty of one count of sexual conduct, which alleged that he "place[d] his penis inside the victim's vulva," and one count of sexual exploitation, which alleged that he possessed a separate digital photograph of A.M. "engaging in actual or simulated oral sex." (Doc. 19, Exs. A, B.) Petitioner was sentenced to consecutive terms totaling 60.5 years. (Doc. 19, Ex. C.)

Petitioner raised several claims on direct appeal. (Doc. 19, Ex. D.) The Arizona Court of Appeals affirmed his convictions and sentences. (Doc. 19, Ex J. at 3.) The Arizona Supreme Court vacated the Arizona Court of Appeals' opinion and remanded for reconsideration in light of an intervening Arizona Supreme Court decision. *State v. Herrera*, 285 P.3d 308 (Ariz. 2012) (memorandum). After remanding to the trial court for further findings and receiving supplemental appellate briefing, the Arizona Court of Appeals again affirmed Petitioner's convictions and sentences. (Doc. 19, Exs. G–J.) The Arizona Supreme Court denied Petitioner's Petition for Review. (Doc. 19, Ex. S at 20.) Petitioner then filed a Notice of Post-Conviction Relief ("PCR") (Doc. 19, Ex. K), and subsequently a PCR Petition (Doc. 19, Ex. L). The PCR court held an evidentiary hearing

after briefing on the PCR Petition was completed. (Doc. 19, Exs. M–O.) The PCR court subsequently denied the Petition on the merits. (Doc. 19, Ex. P.) The Arizona Court of Appeals granted review but denied relief (Doc. 19, Ex. Q), and the Arizona Supreme Court denied review (Doc. 19, Ex. U at 4).

Petitioner then timely brought the instant Petition for Writ of Habeas Corpus, raising eight claims for relief. (Doc. 1.) Magistrate Judge Kimmins filed an R&R recommending the Court reject Petitioner's claims and deny the Petition for Writ of Habeas Corpus. (Doc. 27.) Petitioner filed Objections to the R&R (Doc. 32) and Respondents filed a Response to Petitioner's Objections (Doc. 33).

## II.     Standard of Review

### A.     Habeas Review Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim that was "adjudicated on the merits" by the state courts, unless the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presenting in the State court proceeding. 28 U.S.C. § 2254(d)(2).

To determine whether a decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," a court must determine if cases decided by the Supreme Court at the time the petitioner's state court conviction became final "clearly established" the principle cited by the petitioner. *Williams v. Taylor*, 529 U.S. 362, 390 (2000). A state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Id.* at 405–06. A state court

decision involves an "unreasonable application" of law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court decision "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Id.* at 407. It is not enough that a court believes a state court determination to be in error, rather, the state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

To determine if a state court decision involved "an unreasonable determination of the facts in light of the evidence presented to the state court," state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

### B.   Review of Magistrate Judge's Report and Recommendation

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge.  28 U.S.C. § 636(b)(1).  The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  *Id.*  The advisory committee's notes to Fed. R. Civ. P. 72(b) state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge.  Fed. R. Civ. P. 72(b), advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

. . . .

III.    **Discussion**

    A.    **Claim 1 – 3: Evidentiary Claims**

        a.  **Claim 1**

In Claim 1, Petitioner argues that he was denied a fair trial by the introduction of evidence of uncharged sexual acts with A.M. (Doc. 1 at 6.) In particular, Petitioner challenges the introduction of two portions of videotape appearing to show A.M. with her breasts exposed, and statements made by A.M. to law enforcement officers describing uncharged sexual acts involving Petitioner and A.M. committed in Yuma, Arizona. (*Id.*)

Before trial, the state filed a notice disclosing its intent to introduce this evidence, and Petitioner objected, arguing that: (1) there was insufficient evidence establishing he had committed the uncharged acts; (2) the evidence was improper character evidence under Rule 404 of the Arizona Rules of Evidence; and (3) the danger of unfair prejudice outweighed the evidence's probative value. (Doc. 19, Ex. J at ¶¶ 5–6.)

After a hearing, Judge Cruikshank ruled that the portions of videotape as well as A.M.'s statements to law enforcement officers were admissible as "intrinsic" to the charged offenses. (*Id.* at ¶ 7.) Because he found the evidence admissible as intrinsic, he also found that an analysis under Rule 404 of the Arizona Rules of Evidence was not necessary. (*Id.*) After Judge Cruikshank's recusal, defense counsel asked Judge Campoy[1] to reconsider Judge Cruikshank's previous rulings on the admissibility of evidence pertaining to the acts in Yuma. (*Id.* at ¶ 8.) Judge Campoy refused to reconsider Judge Cruikshank's previous rulings on other-act evidence, noting that the challenged evidence "would be part and parcel and intrinsic to the charges." (*Id.*) Petitioner again objected to introduction of evidence of the Yuma acts at trial, and Judge Cahill overruled his objection, stating that he had "independently looked at the arguments of counsel" and determined that the prior rulings should stand. (*Id.* at ¶ 9.)

The Arizona Court of Appeals rejected Petitioner's arguments relating to this other-act evidence on direct appeal. *State v. Herrera*, 243 P.3d 1041 (Ariz. App. 2010). The

---

[1] As discussed below, the case was initially assigned to Judge Campoy after Judge Cruikshank recused himself. Judge Cahill was then appointed to preside over the trial.

1    Arizona Supreme Court, however, vacated the Court of Appeals' opinion and remanded

2    the matter for reconsideration in light of *State v. Ferrero*, 274 P.3d 509, 513 (Ariz. 2012),

3    which clarified what qualifies as "intrinsic" evidence under Arizona law. *State v. Herrera*,

4    285 P.3d 308 (Ariz. 2012) (memorandum). The Arizona Court of Appeals remanded the

5    case to the trial court to determine if the other-act evidence, even if not intrinsic to the

6    charged offenses, was nonetheless admissible under Rule 404(c) of the Arizona Rules of

7    Evidence. (Doc. 19, Ex. J at ¶ 10.) On remand, the trial court concluded the evidence was

8    admissible under Rule 404(c). (*Id.*) The appellate courts affirmed admission of the

9    evidence under Rule 404(c). (*Id.* at ¶¶ 11–34; Doc. 19, Ex. U at 4.)

10        In addition to his claim that the introduction of this other-act evidence violated his

11    right to a fair trial, Petitioner also claims that his right to equal protection was violated

12    when his case was remanded for analysis under Rule 404(c), rather than for a new trial as

13    in *Ferrero* itself. (Doc. 1 at 6.) Petitioner also argues that the state courts violated the proper

14    evidentiary procedure under Arizona law by having the Rule 404(c) determination made

15    on remand after trial. (*Id.* at 4–7)

16        Magistrate Judge Kimmins found that Petitioner's challenge to the state court's

17    adherence to state law evidentiary procedure is not cognizable in this federal habeas

18    proceeding. (Doc. 27 at 6.) To the extent Petitioner contends the admission of the other act

19    evidence violated his constitutional right to due process, Magistrate Judge Kimmins found

20    that the state courts' findings were not contrary to established law because the Supreme

21    Court has never determined that admission of propensity evidence violates a defendant's

22    right to due process. (*Id.* at 7.) Finally, Magistrate Judge Kimmins rejected Petitioner's

23    equal protection claim, determining that Petitioner received the full benefit of the new rule

24    announced in *Ferrero* and that remand for an analysis under Rule 404(c) in the first

25    instance, rather than an entirely new trial, was appropriate. (*Id.* at 6.)

26        In his Objections, Petitioner contends that the post-trial determination on remand

27    that the other-act evidence was admissible under Rule 404(c) violated Arizona's

28    evidentiary rules. (Doc. 32 at 4–7.) Petitioner maintains that evidence admitted under Rule

404(c) of the Arizona Rules of Evidence must be reviewed pretrial rather than post-trial on remand. (*Id.*) This Court, however, cannot offer Petitioner relief based on this claim. As Magistrate Judge Kimmins correctly concluded, a federal court conducting habeas review will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Petitioner also objects that his right to a fair trial was violated by the improper introduction of this other-act evidence. (Doc. 32 at 2.) However, as Magistrate Judge Kimmins found, the Supreme Court has explicitly left open the question of whether "the use of 'prior crimes' evidence to show propensity to commit a charged crime" constitutes a violation of the Due Process Clause. *See Estelle v. McGuire*, 502 U.S. at 75 n.5.  The state court's decision here therefore could not have violated "clearly established Federal law, as determined by the Supreme Court of the United States," and federal habeas relief is therefore not available. *See* 28 U.S.C. § 2254(d)(1); *see also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (finding "no Supreme Court precedent establishing that admission of propensity evidence, as here, to lend credibility to a sex victim's allegations, and thus indisputably relevant to the crimes charged, is unconstitutional").

Petitioner does not object to Magistrate Judge Kimmins's treatment of his Equal Protection Clause argument, and the Court also adopts Magistrate Judge Kimmins's reasoning as to that argument. Accordingly, the denial of Claim 1 by the state courts did not involve an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

### b.    Claim 2

In Claim 2, Petitioner argues that the trial court violated his rights to present his defense and confront witnesses by precluding evidence and cross-examination regarding an alleged consensual same-sex relationship that the victim had shortly before accusing Petitioner. (Doc. 1 at 7.) Petitioner argues disclosure of this consensual same-sex relationship at trial would have cast doubt on the victim's credibility before the jury

because the victim might have fabricated her allegations against Petitioner to deflect attention from this consensual relationship. (*Id.*)

At a preliminary hearing, Judge Campoy found "no legal basis or evidentiary relationship between the alleged prior relationship with a same-sex partner and the issue involved in the case." (Doc. 19, Ex. J at ¶ 40.) When defense counsel tried to introduce the evidence at trial, Judge Cahill found that "it's just wild speculation that any of these acts would have any relevance." (*Id.*) The Arizona Court of Appeals agreed that the evidence was properly precluded as prejudicial with little evidentiary value. (*Id.* at ¶¶ 37–42.)

Magistrate Judge Kimmins similarly found that Petitioner failed to demonstrate that the proffered cross-examination could reasonably have caused the jury to discredit the victim's testimony. (Doc. 27 at 8–10.) She found that "there is no connection between the victim's same-sex relationship, or her need to hide it, and her allegations against Petitioner." (*Id.* at 9.) Magistrate Judge Kimmins found, in particular, that Petitioner failed to "identify any negative consequences the victim would have endured if her relationship had become known or how accusing [Petitioner] decreased the risk of her relationship being exposed." (*Id.*)

Petitioner objects to Magistrate Judge Kimmins's finding that Petitioner neither identified any negative consequences the victim would have endured if her alleged same-sex relationship had become exposed nor explained how accusing Petitioner decreased the risk of her relationship being exposed. (Doc. 32 at 9.)  Petitioner argues that although he did not provide an "exhaustive dissertation on this issue – owing to the limited space afforded," the facts are present in "ample locations in the record." (*Id.* at 9–10.) Although the Court granted Petitioner permission to significantly exceed page limits in his Objections to Magistrate Judge Kimmins's R&R (Doc. 36), Petitioner does not include those facts in his Objections. (Doc. 32 at 9–10.) The Court is unable to discern what specific facts in his case Petitioner believes support a conclusion that the victim would suffer negative consequences if her relationship had been exposed or why falsely accusing Petitioner would prevent her relationship from being exposed.

Petitioner also objects that his deflection theory was rendered plausible by the state expert witness's testimony that an adolescent female might make false allegations to distract from a consensual relationship. (*Id.* at 11.) The state's expert, Wendy Dutton, testified that adolescent females might make false accusations for several reasons, including a desire to change their living situation, mental illness, or "to conceal consensual sexual activity." (Doc. 26-3 at 49.) Regarding attempts to conceal consensual sexual activity, Ms. Dutton explained that adolescent girls "may be sexually active with a boyfriend, and when they're either caught or perhaps they're concerned they might be pregnant, they might . . . claim that they were raped by someone . . . so they wouldn't have to identify who their partner is." (*Id.*) The Court finds that, in context, Ms. Dutton's testimony does not meaningfully corroborate Petitioner's theory that the accusations against him were fabricated in order to "deflect" attention from a consensual sexual relationship. Petitioner has not presented evidence that A.M. had been "caught" – on the contrary, the proffered evidence appeared to suggest that A.M. did not attempt to hide this consensual relationship from her family. (Doc. 26-2 at 70–71). Petitioner has not demonstrated that there was a threat the relationship would be disclosed to other people, nor that negative consequences would have flowed from such disclosure, nor that a false accusation against Petitioner would avoid such a disclosure.

Finally, Petitioner objects that, even in the absence of specific evidence supporting his theory of defense, the question is "still wide open" because he was prevented from exercising his constitutional right to explore the question through cross-examination at trial. (Doc. 32 at 8.)

The Supreme Court has made clear that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986) (internal quotation marks and citation omitted). At the same time, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

1    confusion of the issues, the witness' safety, or interrogation that is repetitive or only

2    marginally relevant." *Id.* at 679. To determine whether a trial court's refusal to permit

3    cross-examination was constitutional error, the Court must first determine "whether the

4    proffered cross-examination sufficiently bore upon [the witness'] reliability or credibility

5    such that a jury might reasonably have questioned it." *Ortiz v. Yates*, 704 F.3d 1026, 1035

6    (9th Cir. 2012) (citing *Fowler v. Sacramento Cty. Sheriff's Dep't*, 421 F.3d 1027, 1038

7    (9th Cir. 2005)).

8        Here, Petitioner has not demonstrated that cross-examination into the victim's

9    sexual history might lead to any facts from which a jury could draw a permissible inference

10   about the reliability or credibility of the victim's testimony. It was therefore within the trial

11   court's discretion to "impose reasonable limits on such cross-examination based on

12   concerns   about,   among   other   things,   harassment   [and]   prejudice   .   .   ."

13   *Delaware*, 475 U.S. at 679.

14       Accordingly, the denial of Claim 2 by the state courts did not involve an objectively

15   unreasonable application of clearly established federal law or an unreasonable

16   determination of the facts in light of the evidence presented.

17                          **c.    Claim 3**

18       In Claim 3, Petitioner argues that the trial court erred by allowing the State's child

19   abuse expert, Wendy Dutton, to provide testimony that improperly invaded the province of

20   the jury and vouched for the victim. (Doc. 1 at 8.) The trial court read two juror questions

21   to Dutton, "What percentage of allegations later prove to be false?" and, "What are the

22   statistics of stepparents abusing stepchildren?" (Doc. 26–3 at 66.) Ms. Dutton initially

23   stated that she didn't believe she was allowed to answer such questions, but upon further

24   prompting by the court and prosecutor, stated that, "The most methodologically sound

25   studies seem to indicate that false allegations occur less than ten percent of the time" and

26   that, "[T]he most common victim/perpetrator relationship is . . . [generally] . . . a girl with

27   the mother's either stepfather or boyfriend." (*Id.* at 66–67.)

28

On direct appeal, the state conceded that the introduction of this testimony concerning the specific percentage of false sexual abuse allegations and the most common type of perpetrators was error under *Arizona v. Lindsey*, 720 P.2d 73, 76 (Ariz. 1986), which held that "trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness." (Doc. 19, Ex. J at ¶ 44.) The Arizona Court of Appeals agreed that introduction of the challenged testimony was erroneous, but nonetheless found that Petitioner failed to object during trial and so "forfeited the right to seek relief for all but fundamental, prejudicial error." (*Id.* at ¶ 46.) The appellate court concluded that the expert testimony was not fundamental, prejudicial error. (*Id.* at ¶ 47.) First, there was "ample extrinsic evidence of guilt" in the form of "numerous photographs and videotapes and testimony of other witnesses." (*Id.*) Second, A.M. testified at trial and so the jurors were able to directly judge her credibility. (*Id.*) Finally, the trial court instructed the jurors that they were not bound by any expert opinion. (*Id.* at ¶ 48.)

Magistrate Judge Kimmins similarly found that the admission of this testimony, while in error, did not "so fatally infect[] the proceedings as to render them fundamentally unfair." (Doc. 27 at 11) (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)). She reasoned that defense counsel re-crossed Dutton after the juror questions and Dutton agreed that "[t]here may be any number of allegations that are never actually proven [false or] otherwise," and that Dutton also testified that adolescent girls have higher rates of false accusations. (*Id.*) Magistrate Judge Kimmins also considered that Petitioner's counsel testified at the PCR hearing that Dutton's percentage testimony was useful rather than prejudicial. (*Id.*) Magistrate Judge Kimmins also noted that the jury was able to hear directly from the victim and assess her credibility and that the jury was instructed that it was not bound by expert opinion. (*Id.*)

Petitioner objects that Magistrate Judge Kimmins did not sufficiently consider the harmful way in which this improper testimony was seized upon and utilized by the prosecution. (Doc. 32 at 14.) Petitioner notes that the prosecutor referred to Ms. Dutton's percentage testimony during closing argument, stating:

- 11 -

1
2
3

> Quite frankly, without knowing anything else about the case, you could be firmly convinced that he's guilty. Nothing about the case in terms of Ms. Dutton's statistics. Ninety percent? You decide. Without knowing anything else about the case, you could be firmly convinced.

4   (Doc. 32 at 14.) Although this argument is troubling in that it suggested to the jury that the

5   expert testimony itself would be a sufficient basis for a finding of guilt, this argument was

6   only offered by the state in rebuttal closing argument in response to Petitioner's trial

7   counsel's sustained argument that Ms. Dutton's testimony as to a "ten percent chance [of]

8   false allegations" constituted reasonable doubt on its own. (Doc. 26–8 at 153.)

9   In this habeas proceeding, this Court looks not to whether the admission of this

10  evidence was erroneous under state law, but rather whether its admission "so fatally

11  infected the proceedings as to render them fundamentally unfair." *Jammal*, 926 F.2d at 919

12  "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient

13  basis for granting habeas relief." (*Id.*) "Only if there are *no* permissible inferences the jury

14  may draw from the evidence can its admission violate due process. Even then, the evidence

15  must 'be of such quality as necessarily prevents a fair trial.'" *Id.* at 920 (quoting

16  *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).

17  Although Petitioner implies that the prosecutor's reliance upon the improperly

18  admitted testimony automatically rendered his trial fundamentally unfair, Petitioner does

19  not point to any established federal law supporting such a conclusion. Viewing the

20  evidentiary error in context, the Court cannot conclude that it was objectively unreasonable

21  or in violation of clearly established federal law for the state courts to determine that the

22  admission of this testimony was harmless error. In light of the significant other evidence

23  introduced at trial, including photographs, videotapes, and the testimony of the victim and

24  other witnesses, the introduction of this evidence did not deprive Petitioner of a

25  fundamentally fair trial. The jurors were able to directly judge A.M.'s credibility because

26  she testified at trial. Petitioner's counsel testified at the PCR hearing that Dutton's

27  percentage testimony was useful rather than prejudicial, and Petitioner's counsel also drew

28  out testimony from the state's expert witness on cross-examination that "[t]here may be

any number of allegations that are never actually proven [false or] otherwise" and that adolescent girls have higher rates of false accusations. (Doc. 26–3 at 65, 68.) Finally, as both the Arizona Court of Appeals and Magistrate Judge Kimmins recognized, the trial court instructed the jurors that they were not bound by any expert opinion. (Doc. 26–8 at 72.)

Accordingly, the Court determines that the introduction of this testimony was not "of such quality as necessarily prevents a fair trial." *See Jammal*, 926 F.2d at 920. The introduction of this testimony did not render Petitioner's trial "fundamentally unfair." *Id.* The denial of Claim 3 by the state courts did not involve an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

### B.      Claims 4–7: Ineffective Assistance of Counsel

In Claims 4 through 7, Petitioner argues that his trial counsel rendered constitutionally inadequate assistance. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). To succeed on an ineffective assistance claim, a petitioner must also affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

. . . .

- 13 -

1          **a.      Claim 4**

2          In Claim 4, Petitioner argues that his trial attorney was ineffective in responding to

3   potential biases on the part of Judge Cruikshank, who was originally assigned to

4   Petitioner's case. According to the PCR court, a detective testified that Judge Cruikshank

5   remarked about Petitioner along the lines of, "if he's guilty let's hope someone does what

6   they have to and we don't have to deal with him again." (Doc. 19, Ex. P at 4.) Judge

7   Cruikshank recused himself, but not before ruling that the evidence of uncharged acts of

8   sexual abuse discussed in Claim 1 was admissible. (*Id*.) Petitioner argues that his trial

9   attorney failed to submit a written request to have Judge Cruikshank's rulings reconsidered

10  after he recused himself and also failed to seek sanctions against the State for not promptly

11  disclosing Judge Cruikshank's potential bias. (Doc. 1 at 9.)

12         Petitioner's counsel testified to the PCR court that she verbally addressed the

13  possibility of revisiting Judge Cruikshank's rulings with Judge Campoy, who was assigned

14  after Judge Cruikshank's recusal. (Doc. 19, Ex. O at 19–21.) Judge Campoy indicated that

15  Petitioner's counsel had not provided a compelling argument that the decisions were

16  legally incorrect and that Judge Campoy was not inclined to reconsider them. (*Id.* at 18–

17  20, 76–77.) Based on that exchange, Petitioner's counsel determined that filing a written

18  request for reconsideration would be futile. (*Id.* at 18–19, 76–77.) The PCR court rejected

19  Petitioner's ineffectiveness claim, concluding that there was no evidence of actual bias on

20  the part of Judge Cruikshank and that Petitioner produced no evidence or argument "that

21  another judge would have ruled any differently than Judge Cruikshank on any issue,

22  including the ruling on this other-act evidence." (Doc. 19, Ex. P at 4.)

23         Magistrate Judge Kimmins found that Petitioner failed to show either that his

24  counsel rendered deficient performance or that Petitioner was prejudiced. (Doc. 27 at 13.)

25  She found that Petitioner's counsel had a reasonable basis for believing that filing a written

26  request for reconsideration would be futile, and that "Petitioner does not argue, let alone

27  establish, that upon reconsideration Judge Campoy would have modified any of Judge

28  Cruikshank's rulings." (*Id.*)

In his Objections, Petitioner again argues that he was the victim of Judge Cruikshank's bias. However, Petitioner provides no new evidence or argument to the effect that Judge Campoy might have reconsidered Judge Cruikshank's rulings if trial counsel had filed a written request for reconsideration. Instead, Petitioner argues that Judge Cruikshank's rulings were "nullities and of no effect" and so it is "irrelevant" whether Judge Cruikshank's rulings "were legally incorrect or not." (Doc. 32 at 17.) Furthermore, Petitioner argues that "Judicial bias, if proven, requires automatic reversal and is not subject to harmless error review" because it is "structural error." (*Id.*)

Petitioner's contentions are not supported by the cases he cites, which largely concern the standard of review on direct appeal of verdicts rendered after trial before a judge with proven bias.[2] While the Supreme Court has held that judicial bias can constitute structural error and require automatic reversal, it has done so because judicial bias at trial is an error so pervasive as to preclude harmless error review. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991) ("The entire conduct of the trial from beginning to end is obviously affected by . . . the presence on the bench of a judge who is not impartial") (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)). Here, Judge Cruikshank's potential bias did not "infect the entire trial process" because he recused himself well before trial. Petitioner has not cited any authority demonstrating that Judge Cruikshank's pre-trial involvement in this case mandates habeas relief.

The cases cited by Petitioner are also inapposite because Petitioner's claim is before the Court on federal habeas review. Under the well-established framework provided by the Supreme Court in *Strickland v. Washington,* a petitioner claiming ineffective assistance must affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. Petitioner cites cases considering structural error on direct review without accounting for the fact that courts must apply a "different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of

---

[2] Petitioner primarily relies on *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) and *Neder v. United States*, 527 U.S. 1 (1999) to support his structural error argument. (Doc. 32 at 16–17.)

counsel." *Weaver v. Massachusetts.*, 137 S. Ct. 1899, 1912 (2017). Considerations of finality, comity, and federalism also counsel that a higher showing of prejudice is required to grant a federal writ of habeas corpus than to reverse a conviction in the normal course of judicial review. *See Brecht v. Abrahamson*, 507 U.S. 619, 634–639 (1993) (explaining that the harmless error standard applicable on direct review is too forgiving to be applied on federal habeas review and instead requiring habeas petitioners to establish "actual prejudice" by showing that the error "had substantial and injurious effect or influence in determining the jury's verdict*.*") Petitioner has not demonstrated prejudice.

Petitioner has not demonstrated that his trial counsel acted unprofessionally in failing to object in writing to Judge Cruikshank's pre-recusal rulings, or that any error might be reasonably believed to have made a difference in the outcome of his case. Petitioner does not allege that another judge would have determined the legal issues differently than Judge Cruikshank, much less that a different ruling would have had a reasonable chance of leading to a different outcome at trial. The Court finds that Petitioner has failed to demonstrate either deficient performance or prejudice with respect to Claim 4. The denial of this claim by the state courts did not involve an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

### b. Claim 5

In Claim 5, Petitioner alleges his trial counsel was ineffective in relation to the admission of four pieces of evidence.

#### 1. Subclaim One

In the first subclaim, Petitioner argues that his trial counsel was ineffective in failing to move to preclude the victim's testimony that sexual intercourse occurred "nearly every night" and to properly object to that testimony during trial. (Doc. 1 at 10.) The PCR Court rejected this argument, finding that Petitioner's trial counsel's decision not to object was a "strategic decision" that did "not establish ineffectiveness." (Doc. 19, Ex. P at 5.)

Magistrate Judge Kimmins found that trial counsel did not render deficient

performance because counsel could have reasonably assumed that the evidence would have been admitted over an objection. (Doc. 27 at 15.) Before trial, Petitioner's trial counsel had moved to preclude other act evidence involving sexual conduct with the same victim which occurred in Yuma, Arizona prior to the indictment period. However, the trial court determined the evidence was admissible before trial, and overruled Petitioner's counsel's objection during trial as well. (Doc. 26-1 at 234–36.) Magistrate Judge Kimmins therefore reasoned that "because the trial court admitted all the other act evidence presented by the State, except for one photograph lacking foundation, counsel could reasonably conclude the victim's testimony on the frequency of sexual conduct contemporaneous with the charged conduct would have been admitted" and that it was therefore "not unreasonable for counsel not to object." (Doc. 27 at 15.) Magistrate Judge Kimmins concluded that Petitioner had failed to rebut the presumption that his trial counsel had acted for tactical reasons, and also noted that, in any case, Petitioner failed to demonstrate prejudice. (*Id.*)

In his Objections, Petitioner argues that *Strickland*'s presumption that counsel acts for strategic reasons does not apply here because a court may not "simply invent a presumption where no evidence exists to hang that presumption on." (Doc. 32 at 21.) Petitioner argues that, "absent counsel's full explanation under oath that she had valid strategic reasons to not object," the Court must assume that she was inattentive or neglectful. (*Id.*) But this argument turns *Strickland*'s presumption on its head. The case Petitioner cites for this proposition, *Marcrum v. Luebbers*, 509 F.3d 489, 502 (8th Cir. 2007), discusses a situation where a petitioner provided direct evidence that counsel's actions resulted from inattention or neglect rather than reasoned judgment. (*Id.*) Here, in contrast, Petitioner has not produced any direct evidence that counsel's actions resulted from inattention or neglect, and so testimony of Petitioner's counsel is not necessary for the Court to conclude that she acted strategically. *See Morris v. State of Cal.*, 966 F.2d 448, 456–57 (9th Cir. 1991) ("We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation.")

Accordingly, the Court adopts Magistrate Judge Kimmins's finding that Petitioner has failed to rebut the presumption that his counsel acted for tactical reasons. The Court notes that Petitioner did not object to Magistrate Judge Kimmins's finding that Petitioner also failed to demonstrate prejudice. The Court adopts that finding as well.

### 2.    Subclaim Two

In his second subclaim, Petitioner argues that his trial counsel brought an incriminating image of the victim within the State's disclosure to the attention of the prosecution. (Doc. 1 at 10.) The PCR court found that counsel did not alert the prosecution to the incriminating material, but rather that trial counsel requested a copy of video evidence and, when a detective was copying the material, he discovered an incriminating image of the victim. (Doc. 19, Ex. P at 5.) Magistrate Judge Kimmins found that Petitioner failed to rebut the PCR court's factual finding by clear and convincing evidence. (Doc. 27 at 16.) In his Objections, Petitioner maintains that the "record reveals conflicting views about the facts of this concern," but Petitioner does not provide any additional evidence that could rebut the PCR court's factual finding. (Doc. 32 at 22.) As this Court presumes the PCR court's fact finding is correct unless rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), the Court adopts Magistrate Judge Kimmins's conclusion.

### 3.    Subclaims Three and Four

In his third subclaim, Petitioner argues that his trial counsel rendered ineffective assistance by failing to move the court to preclude evidence of "thousands of irrelevant but inflammatory images of female genitalia" found on his computer. (Doc. 1 at 10.) In his fourth subclaim, Petitioner argues that trial counsel also rendered ineffective assistance by opening the door during trial to the admission of these images. (*Id.*)

Trial counsel testified to the PCR court that she mentioned the photographic collection to desensitize the jury to the significant level of sexual activity going on in Petitioner's home. (Doc. 19, Ex. O at 37–38.) She believed it would be more prejudicial to allow the State to present only the two incriminating images depicting A.M., rather than the large volume of pictures with the possibility that the two images had been planted and

hidden among the other photographs. (*Id.* at 36–37, 59–60.) Petitioner's trial counsel testified before the PCR court that:

> I embraced [the images]. I brought it up with the detective. I didn't talk about it as much in closing as I wanted to because we were running out of time when I finally got to that particular segment in my closing argument. But it went 'part and parcel' with my whole theory of the case, that this was a conspiracy between our victim, or minor victim, as well as the mother, which was Mr. Herrera's desire for me to put forth during the trial, that this was a conspiracy. He was very angry that the mother wasn't charged with these crimes as well. So as a result, those images just helped our case, in our opinion, as far as our trial strategy was concerned, because anyone and everyone had access to that computer. And that's what we were trying to show, it's that there was no way to prove one way or another anything about those images.

(*Id.* at 32.) The PCR court concluded counsel's strategy was reasonable and supported Petitioner's theory of the case. (Doc. 19, Ex P. at 6.)

Magistrate Judge Kimmins found that the PCR court's determination that counsel made a strategic decision was not an objectively unreasonable application of federal law because trial counsel provided rational reasons for not moving to preclude this evidence and for choosing to raise it at trial. (Doc. 27 at 18.)

Petitioner makes two objections. (Doc. 32 at 23–24.) First, Petitioner argues that the images did not support an inference that someone had "planted" the two incriminating images because they were found on a different computer than the approximately 17,500 images at issue in this subclaim. (*Id.* at 23.) This objection is overruled because counsel's strategy of creating doubt by suggesting a possibility that the incriminating images were not placed on the computer by Petitioner could have been effective even though the incriminating images were found on a different computer than the large collection of images. Moreover, the decision to introduce the images to desensitize the jury to the high level of sexual activity going on in Petitioner's home was reasonable even absent a theory that the incriminating images were "planted." Second, Petitioner argues that "a competent, well-prepared, and effective attorney would develop strategies to minimize the jury's exposure to irrelevant, prejudicial evidence." (*Id.* at 24.) However, Petitioner has made no

1    showing that the images were so prejudicial that they had no value in contextualizing the

2    incriminating images as part of a trial strategy.

3         The Court concludes that Petitioner has failed to demonstrate either deficient

4    performance or prejudice as to any subclaim of Claim 5. Accordingly, the denial of each

5    subclaim of Claim 5 by the state courts under *Strickland* did not involve an objectively

6    unreasonable application of clearly established federal law or an unreasonable

7    determination of the facts in light of the evidence presented.

8              **c.    Claim 6**

9         In Claim 6, Petitioner alleges counsel was ineffective in failing to object to a sexual

10   propensity instruction given to the jury. (Doc. 1 at 11.) Petitioner contends that the

11   instruction was not warranted because no other act evidence was properly admitted under

12   Arizona Rule of Evidence 404(c). (*Id*.)  The trial judge instructed the jury:

13              Other acts. If you find that evidence of other acts of sexual
                misconduct by the defendant has been presented, you may
14              consider such evidence in determining whether Defendant had
                a character trait that predisposed him to commit the crimes
15              charged.

16              You may determine that the defendant had a character trait that
                predisposed him to commit the crimes charged only if you
17              decide that, one, the State has proved by clear and convincing
                evidence that Defendant committed these act[s], and, two, the
18              State has proved by clear and convincing evidence that these
                facts show Defendant's character predisposed him to commit
19              abnormal or unnatural sex acts. You may not convict the
                defendant of the crimes charged simply because you find that
20              the defendant committed the other act or that he had a character
                trait that predisposed him to commit the crimes charged.
21              Evidence of these acts does not lessen the State's burden to
                prove Defendant's guilt beyond a reasonable doubt as to any
22              given charge.

23   (Doc. 26-8 at 73–74.) The PCR court ruled that Petitioner was not prejudiced by the

24   instruction because the evidence warranted it. (Doc. 19, Ex. P at 7.) The Arizona Court of

25   Appeals similarly found the propensity evidence was properly admitted under Arizona

26   Rule of Evidence 404(c) and that the jury instruction was properly given under state law.

27   (Doc. 19, Ex. J at 21.)

28        Magistrate Judge Kimmins found that deference to the state court's interpretation

of state law was warranted because a federal court sitting in habeas review is ordinarily "bound to accept a state court's interpretation of state law." (Doc. 27 at 19) (quoting *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008)).

In his Objections, Petitioner expands on his argument from Claim 1, and argues that counsel's failure to object was ineffective assistance because the 404(c) evidence was inadmissible. (Doc. 32 at 25.) The Court has already concluded that it must defer to the state courts' construction of state procedural law in this instance. (*See* Claim One*, supra* at 7–9.) Petitioner also argues that, even if the evidence was properly admitted, "the failure of counsel to timely and properly object to the 'other acts evidence' instruction where such an objection stood a high likelihood of success, constitutes performance below the prevailing professional norms." (Doc. 32 at 25.) Petitioner, however, has not demonstrated that an objection to the jury instruction "stood a high likelihood of success," and for the reasons discussed in Claim One, the Court concludes that an objection would not likely have been sustained.

Because this Court must defer to the state courts' reasonable construction of their own procedural rules, and because under the interpretation of the state courts the objection Petitioner claims counsel should have made would not have been granted, the Court adopts Magistrate Judge Kimmins's recommendation. Accordingly, the denial of Claim 6 by the state courts did not involve an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

### d.    Claim 7

In Claim 7, Petitioner alleges that his trial counsel rendered ineffective assistance of counsel by failing to object to the juror questions that led the state's expert Wendy Dutton to make the statements discussed in Claim 3. (Doc. 1 at 12.)  The juror question led Ms. Dutton to testify that "allegations of sexual misconduct by adolescent females are later proven false less than 10 percent of the time" and that "the most common victim/perpetrator relationship is . . . [generally] . . . a girl with a mother's either stepfather

or boyfriend[.]" (*Id.*) Petitioner argues that counsel's failure to object to these questions was part of an unreasonable and constitutionally deficient trial strategy. (*Id.*)

Regarding the percentage testimony, Magistrate Judge Kimmins found that counsel's trial strategy was reasonable. (Doc. 27 at 20.) Trial counsel testified to the PCR court that "her trial technique is one that if the jury wants the answer to a question, provided that it's not something horribly prejudicial, which in this instance it was not, give them the answer" and that she knew Dutton would testify that ten percent or less claims are proven false. (Doc. 19, Ex. P. at 7.) The PCR court cited counsel's testimony that "she liked the answer," and was going to "prance all over the courtroom with it" because it "basically amounts to reasonable doubt." (*Id.*, Ex. P at 7.) The PCR court found that using this testimony to create reasonable doubt was a "well-reasoned trial strategy." (*Id.*) Magistrate Judge Kimmins agreed, noting that Petitioner presented no evidence that counsel's decision was unreasonable, such as an opinion from another attorney or prevailing norms from attorney guidelines, and that Petitioner therefore failed to satisfy the heavy burden of proving that trial strategy was deficient. (Doc 27 at 20.)

Regarding the common victim/perpetrator relationship question, Magistrate Judge Kimmins determined that admission of this testimony was not raised as a basis of ineffective assistance of counsel in the PCR Petition. (*Id.* at 21, n.5.) She therefore concluded that it was procedurally defaulted under the doctrine of *Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991). (*Id.*) She also noted that, even if it were not procedurally defaulted, that Petitioner would still be unable to demonstrate prejudice. (*Id.*)

In his Objections, Petitioner restates his arguments from Claim 3 regarding the prejudicial nature of the expert's testimony. (Doc. 32 at 27.) Petitioner argues that the testimony was prohibited, that his counsel had a professional obligation to be familiar with the law, and that acquiescing to impermissibly prejudicial testimony cannot reasonably be considered a "sound trial strategy." (*Id.*) He further argues that ten percent is "clearly a miniscule amount of the whole and could not reasonably be considered a useful talking point to argue in his favor." (*Id.*) Petitioner does not object to Magistrate Judge Kimmins's

conclusion that his claim regarding common victim/perpetrator relationships is procedurally defaulted. (*Id.* at 26–28.)

To prevail on his ineffective assistance claim, Petitioner bears the burden of "overcom[ing] the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted.) This is a "heavy burden" to carry. *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

Here, Petitioner's trial attorney articulated a reasonable purpose in not objecting to the percentage testimony, namely that the testimony would support reasonable doubt. Petitioner strongly disagrees with the strategy but has not brought forth any evidence that it was unreasonable, such as an "alternate attorney's determination challenging" his counsel's strategy, citations to guidelines of professional practice such as "American Bar Association standards and the like," or references to statements made by counsel demonstrating flaws in her trial strategy. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009). In the absence of evidence of unreasonable strategy, and given the strong presumption that counsel acted for strategic reasons, the Court concludes that Petitioner has failed to carry his "heavy burden." *Murtishaw*, 255 F.3d at 939. Accordingly, the denial of Claim 7 by the state courts did not involve an objectively unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.

Petitioner does not object to Magistrate Judge Kimmins's finding that Petitioner's ineffective assistance argument related to the victim/perpetrator relationship question is procedurally defaulted, and the Court finds no clear error in Magistrate Judge Kimmins's analysis and so adopts this conclusion as well.

. . . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.      Claim 8: Cumulative Error

In Claim 8, Petitioner argues that the "cumulative impact of defense counsel's many deficiencies as stated in the foregoing Grounds deprived Petitioner of due process and a fundamentally fair trial, in violation of guarantees provided by the United States Constitution's 5th, 6th and 14th Amendments." (Doc. 1 at 13.) Magistrate Judge Kimmins determined that, because there was no error by counsel in Claims 4 through 7, that "there is no effect to cumulate." (Doc. 27 at 21.)

In his Objections, Petitioner retreats from the Petition's argument that he challenges the "cumulative impact of defense counsel's many deficiencies," and instead states that his cumulative error claim ties together *all* his other claims, including the alleged state court errors in Claims 1 through 3. (Doc. 32 at 28.) Even if the Court were inclined to entertain Petitioner's argument, it would do Petitioner no good because this claim was not exhausted. While Petitioner did present a claim of cumulative error to the state courts in his PCR Petition, the claim was limited to the cumulative errors of Petitioner's defense counsel. (Doc. 19, Ex. L.)  "[A] cumulative error claim must be fairly presented before a state court to be exhausted." *Wooten v. Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008). Because no cumulative error claim tying together all Petitioner's claims was fairly presented to the state courts, the claim is unexhausted and procedurally defaulted and therefore not cognizable in this proceeding. *See Coleman v. Thompson*, 501 U.S. at 730. Accordingly, the Court will review Petitioner's claim of cumulative error as relating to the cumulative effect of his trial counsel's alleged errors, which is the claim Petitioner articulated in his Petition and the claim that Magistrate Judge Kimmins reviewed.

The Court will adopt the recommendation of Magistrate Judge Kimmins as to Petitioner's cumulative error claim. Because the Court did not find that Petitioner's trial counsel rendered deficient performance, there is no error to cumulate. *See Runningeagle v. Ryan*, 825 F.3d 970, 990 n.21 (9th Cir. 2016) (rejecting cumulative error argument because court found IAC claims "insubstantial or unsuccessful on the merits"); *see also*

*Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.")

**IV.    Conclusion**

For these reasons, the Court concludes that each of Petitioner's claims fail. The Court will adopt the findings and recommendations of Magistrate Judge Kimmins and will dismiss Petitioner's Petition for a Writ of Habeas Corpus.

Accordingly,

**IT IS ORDERED** that Petitioner's Objections (Doc. 32) are **overruled**, and that Magistrate Judge Kimmins's Report and Recommendation (Doc. 27) is **accepted and adopted in full**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **denied**. The Clerk of Court is directed to enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that this Court, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability, because reasonable jurists would not find the Court's ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000).

Dated this 1st day of February, 2021.

_____
Honorable Rosemary Márquez
United States District Judge